Bull *v.* Griffith.

CLARK BULL, *appellant v.* CHARLES T. GRIFFITH, *appellee.*

*School Districts. Evidence of their existence. Form of rate bill.*

If a referee find and report the legal existence of a school district merely from parol testimony " that it had been considered as a district for forty years," although such testimony is very indefinite, and open to just criticism on that account, still it is not so fatally defective as to justify a reversal of the referee's report on that ground.

Since the act of 1854, (Laws of 1854, p. 44) authorizing school districts to elect a treasurer, it is proper that the warrant for the collection of a school district tax should require the money, when collected, to be paid to that officer, if one has been elected, and not to the prudential committee.

If an inhabitant of a school district has no list in the district, his name need not appear in the rate bill of a tax laid by such district.

TRESPASS for two sleighs. Plea, the general issue, with a notice of special defense under the statute. The case was referred, and the referee reported that the defendant took and sold the sleighs in question, as collector of school district No. 1, in Mount Tabor, by virtue of a warrant for the collection of a tax laid by that district against the defendant.

The defendant introduced the parol testimony of the clerk of the district, who testified that the said school district had been considered as a district, for a period of forty years, but that he had not personally examined, to ascertain whether there was a record of its organization or not. The plaintiff claimed that this did not amount to legal proof of the existence of the district, but the referee held it sufficient, to which decision the plaintiff excepted.

The defendant offered in evidence, among other things, a rate bill, signed by the prudential committee of said district, and a warrant for the collection of the same, addressed to the defendant as collector. These were objected to by the plaintiff, first, for the reason that two persons lived within the limits of the district, whose names were on the grand list, but not on the rate bill; second, because the warrant was void on its face for uncertainty; third because this tax was made payable, in the warrant, to the treasurer of said district, instead of to the prudential committee.

It was conceded that Clark Thomas and John Thomas, lived within the limits of the district, and that their names were on the grand list, but not on the rate bill.

Other evidence, sufficient in the opinion of the referee, to enable the defendant to recover, was introduced and sundry other objections raised by the plaintiff, none of which, however, are material to the decision of the case.

The county court, at the March Term, 1857,—KITTREDGE, J., presiding,—rendered judgment for the defendant. Exceptions by the plaintiff.

*M. H. Cook* and *D. E. Nicholson*, for the plaintiff.

*S. H. Hodges* and *E. Edgerton*, for the defendant.

The opinion of the court was delivered by

ALDIS, J. This is an action of trespass against the collector of

a school district, for taking and selling the property of the plaintiff, upon a rate bill and warrant, issued for the collection of a school district tax in district No. 1, in Mount Tabor. The facts come before us upon the report of a referee.

The first objection is, that there was no legal proof of the existence of the district. The testimony as reported is "that district No. 1, in Mount Tabor, *had been considered* as a district, for a period of forty years.

The admissibility of parol proof, to show the *practical* existence and organization of a school district for a long period of time, and thus to prove its legal existence, has been so often approved by decisions in this state, that it is not now an open question. The testimony stated in the bill of exceptions, viz: that the district "*had been considered*" a legal district for forty years, is not explicit as to the *facts* which constitute the proof of its actual existence and operation. Still, the language, in its ordinary meaning, may be understood as referring to *acts done by, and dealings had with the district, as a district,* and so tend to prove the fact which the referee has found, that the district had a legal existence.

Although the language is certainly very indefinite and quite open to just criticism on that ground, still we do not deem it so fatally defective as to justify a reversal of the report.

Another objection to these proceedings is, that the warrant requires the collector to pay the moneys collected to the treasurer, when, as the plaintiff claims, the statute requires the money to be paid to the prudential committee. The compiled statutes provide that the warrant shall be made out to the collector, requiring him to pay the money to the prudential committee. When this provision of the statute was made, there was no such officer as treasurer of a school district. In 1854, the legislature passed the act authorizing school districts to elect a treasurer, and under this statute, this district had elected a treasurer. The duties of the office are not specified, except in one particular; "that he shall make an annual report to the district of the amount of money received by him, and the manner in which it has been disbursed." This provision, as well as the very name of his office, implies that the moneys of the district shall, when collected, be paid to, and disbursed by him. The intent of the legislature in creating the office

was obvious, to make an officer whose special duty it should be to receive and disburse all the moneys of the district, and keep an exact account, and make annually a full report to the district; so that the district might the better know what amount was received from the public fund, what from school district taxation, and what became of the moneys so received; in short, that once a year the district might get a full and correct statement of its financial condition. To this end, the moneys collected on taxes ought to be paid to the treasurer. If paid to the prudential committee and by them disbursed without payment over to the treasurer, the object of the statute would be defeated. To require the collector to pay the money to the committee, and then have the committee pass it over to the treasurer, would be establishing by statute an idle ceremony, a roundabout mode of proceeding, increasing the chances of mistakes and the opportunities of mismanagement.

We think, therefore, the warrant properly required the collector to pay the moneys, when collected, to the treasurer.

The attention of the court was called to the warrant and rate bill, which, it was urged, are void for uncertainty. A little difficulty in reading the warrant at first arises from the interlineation in it; but this, and its proper place and order, are readily made out on examination; and when so made out, it is in proper form and quite sufficient.

It is also objected that Clark Thomas and Henry Thomas live within the district, and their names are not set in the rate bill. But it does not appear from the report that they had any list whatever in the district. The prudential committee are required by statute (compiled statutes, chap. 20, sec. 41) to assess the taxes " on the *lists* of the inhabitants of the district." If an inhabitant has no list, his name need not appear.

These, we believe, were all the objections to which the attention of the court was particularly called.

Objections to the records of two warnings and two meetings appear from the report to have been taken before the referee; but as no copies of such papers have been furnished the court, and the objections were not insisted on in argument, we must consider them as waived.

The judgment of the county court is affirmed.